Pace W. Johnson (15970)
PACE JOHNSON LAW GROUP
231 East 400 East, Suite 300
Salt Lake City, UT 84111
*pace@pacejohnson.com*
Telephone: (385) 347-3111
*Attorney for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| Charles Caster, an individual;<br><br>    Plaintiff,<br><br>vs.<br><br>S TALBOT, MICHAEL GRAHAM, SHANE NORTON, TAESHA HIGBEE, ANDREW WRIGHT, ANDREW STEED, Summit County Deputies and government employees; DOE DEPUTIES 1-10; SUMMIT COUNTY SHERIFFS OFFICE, a government entity; SUMMIT COUNTY, a government entity; JUSTIN MARTINEZ, a government employee;<br><br>    Defendants. | **COMPLAINT AND JURY DEMAND**<br><br><br><br>Case No.:  23-cv-00656-CV<br><br>Judge: |

Plaintiff Charles Caster, through counsel, hereby complains against defendants and each of them as follows:

### PRELIMINARY STATEMENT

1.      The following allegations are based upon the undersigned's understanding of the information presently available. This is a civil rights action in which the Plaintiff seeks relief for the Defendants' violation of his rights guaranteed by the United States Constitution, specifically the Fourth, Eighth and Fourteenth Amendments. These rights are further secured by the Civil

Rights Act of 1871, codified as 42 U.S.C. § 1983 and § 1988. This actions also seeks relief under the law, statutes and Constitution of the State of Utah, specifically Article I, §§ 7 and 14 of the Utah Constitution.

2.    In September of 2021 Mr. Caster allegedly "fled from the officers at a high rate of speed through Wasatch County eventually fleeing onto US-189/40 where additional attempts were made to stop the vehicle," charging documents state.

3.    On two separate occasions, the pursuit was called off because the vehicle was going too fast and the involved law enforcement officers had lost visual of the target vehicle. Later, deputies and officers resumed pursuit of the suspect car on River Road to US-189/40 where speeds were reported in excess of 95 mph. Again, the pursuit was called off because it was too dangerous to continue. However, once the chase reached US-189/40, Trooper Richins of the Utah Highway Patrol deployed a tire deflation device to attempt to slow the fleeing vehicle and reported a positive spike on all four tires.

4.    After the pursuit had been deemed too dangerous to continue, and after UHP Trooper Richins already "spiked" the tires, Deputy Talbot of the Summit County Sheriff's Department deployed a second tire spikes/deflating device. This second tire deflating device was deployed where speeds reached approximately 100 mph, which had been known to all agencies involved in the pursuit. The second deployment of a tire deflating device resulted in the vehicle losing control, rolling over multiple times, and crashing off the highway causing a fatal accident. "At the time of the crash, [Reynolds and Caster] were traveling at least between 92 and 103 mph," according to the charging documents. An officer on sight reported, "Spike, good spike, he's crashing he's crashing under the overpass." This quote was taken from law enforcement radio broadcast. The officer who deployed the second tire deflation device which caused the vehicle to

rollover multiple times on the roadway was Deputy Talbot of the Summit County Sheriff's Department.

5.      Both Mr. Charles Dwight Caster, 23 years old, and Ms. Daisha Reynolds "Reynolds", 19 years old, of Salt Lake City, were ejected from the vehicle. Reynolds was pronounced dead at the scene as a result of her injuries. Mr. Caster was transported by medical helicopter to a Salt Lake area hospital in critical condition from the injuries he sustained from the crash. The incident closed US-189/40 westbound for approximately eight hours.

## JURISDICTION AND VENUE

6.      This action arises under the United States Constitution and federal law, particularly the provisions of the Fourth, Eighth and Fourteenth Amendments to the Constitution of the United States, and 42 U.S.C. §§ 1983 and 1988.

7.      This action also arises under the Constitution of the State of Utah Article I, §§ 7 and 14.

8.      This action seeks redress for violations of the civil rights laws of the United States, and jurisdiction is therefore invoked pursuant to 28 U.S.C. § 1343 and 42 U.S.C. § 1983.

9.      As to the State Constitutional claims, this Court's supplemental jurisdiction is invoked under 28 U.S.C. § 1367.

10.      The claims made in this Complaint occurred and arose in the State of Utah, in this District. Venue for the Federal claims is therefore proper under 28 U.S.C. §§ 1391 and 1331. Venue for the State claims is proper under 28 U.S.C. § 1367.

11.      Plaintiff is seeking damages pursuant to the claims for relief specified below in amounts to be proved at trial.

12.      This Court has authority to award costs and attorney fees pursuant to 42 U.S.C. §

1988, and pursuant to the Court's inherent power under State law.

13.     This action also seeks to redress for violations of Plaintiff's constitutional rights secured under the Utah Constitution. This Court further has pendent jurisdiction over any and all State claims pursuant to Utah Code Ann. § 78A-5-102(1).

14.     Venue is proper in this court pursuant to Utah Code Ann. §§ 78B-3-304 to 307.

## NATURE OF THE CASE

15.     The Defendants violated Mr. Caster's Fourth, Eighth and Fourteenth Amendment rights by causing him physical, mental, and psychological injury through the use of excessive force, unauthorized deadly force and battery in their actions against Mr. Caster. The high rate of speed of vehicle made by the Defendants' decision to deploy a spike strip constitutes willful misconduct in intentionally doing an act with knowledge that serious injury or death is a probable, and not merely a possible, result and a willful and wanton conduct disregarding the possible consequence of the loss of human life. This intentional behavior and actions did in fact result in the death of a 19-year-old female. Statistical data available to law enforcement made this tragedy predictable.

16.     The Defendants are liable to Mr. Caster in an action in federal court for a civil rights violation.

## PARTIES

17.     Plaintiff Charles Caster ("Caster") is a resident of Salt Lake County, Utah.

18.     Defendant Deputy S Talbot ("Talbot") is believed to be a resident of Summit County, Utah. At all times relevant to these actions, Talbot was a deputy for Summit County Sheriff's Office.

19.    Defendant Lieutenant Andrew Wright ("Wright") is believed to be a resident of Summit County, Utah. At all times relevant to these actions, Wright was a Lieutenant for the Summit County Sheriff's Office.

20.    Defendant Deputy Michael Graham ("Graham) is believed to be a resident of Summit County, Utah. At all times relevant to these actions, Graham was a deputy for Summit County Sheriff's Office.

21.    Defendant Deputy Shane Norton ("Norton") is believed to be a resident of Summit County, Utah. At all times relevant to these actions, Norton was a deputy for the Summit County Sheriff's Office.

22.    Defendant Deputy Taesha Higbee ("Higbee") is believed to be a resident of Summit County, Utah. At all times relevant to these actions, Higbee was a deputy for the Summit County Sheriff's Office.

23.    Defendant Andrew Steed ("Steed") is believed to be a resident of Summit County, Utah. At all times relevant to these actions, Steed was an employee for the Summit County Sheriff's Office.

24.    Defendant Sheriff Justin Martinez ("Martinez"), a government employee; is a resident of Summit County, Utah. At all times relevant to these actions, Martinez was the Summit County Sheriff and a government employee.

25.    Defendants Doe Officers 1-10 were at all relevant times herein employees of the Summit County Sheriff's Office, an Office of Summit County, operating in the course and scope of their employment, and under the color and guise of the laws of the State of Utah. The specific identities are presently unknown, but upon positive identification they will be properly served with process, and their individual names will be added to this Complaint in accordance with the

applicable federal rules.

26.     Defendant Summit County Sheriff's Office is a law enforcement agency in Summit County, Utah, and governed by Summit County.

27.     Defendant Summit County is a political subdivision of the State of Utah. Summit County has a law enforcement branch known as the Summit County Sheriff's Office ("SCSO") which is authorized to operate by the State of Utah. Summit County funds, trains and supervises the SCSO and is legally responsible for the acts of its employee officers that are within the course and scope of their employment. Summit County, through the actions of SCSO Deputies Talbot, Graham, Norton, Higbee, Steed, Lieutenant Wright, Sheriff Martinez, and Does 1-10, is a "person" within the meaning of 42 U.S.C. § 1983 and Does 1-10 were at all times government employees and state actors.

## FACTUAL ALLEGATIONS

28.     Talbot, Graham, Norton, Higbee, Steed, Lieutenant Wright, Sheriff Martinez, were law enforcement agents and officers or deputies for Summit County at the times of the events in question in this action.

29.     The defendants listed in this Complaint are individually and/or collectively responsible for the excessive force, unlawful seizure, deliberate indifference and deprivation of liberty of Mr. Caster.  Mr. Caster has suffered physically, mentally, emotionally, psychologically, and financially from these wrongful actions.

### A.  EXCESSIVE FORCE

30.     Mr. Caster and Ms. Daisha Reynolds were inside an already stolen vehicle from a parking lot in Hideout, Wasatch County, on September 22, 2021.

31.    About an hour later, a resident in Midway called the police to report someone was trying to break into a vehicle in Midway, Wasatch County.

32.    The burglars in that case drove off in a car that matched the description of the vehicle stolen from Hideout, according to a statement from the Summit County Sheriff's Office.

33.    A Wasatch County Sheriff's Deputy spotted that vehicle on State Route 113.

34.    Wasatch County Deputies, Summit County Deputies and Heber City Police Officers attempted to stop Reynolds and Caster as they allegedly "fled from the officers at a high rate of speed" through Wasatch County eventually fleeing onto US-189/40 and into Summit County.

35.    "Additional attempts were made to stop the vehicle," charging documents state.

36.    On two separate occasions, the pursuit was called off because the fleeing vehicle was going too fast.

37.    Later, deputies and officers resumed pursuit of the fleeing vehicle on River Road to US-189/40 where speeds were reported in excess of 95 mph.

38.    The pursuit was called off because it was too dangerous to continue and law enforcement couldn't maintain constant visual line of sight of the fleeing vehicle.

39.    Once the chase reached US-189/40, Trooper Richins of the Utah Highway Patrol successfully deployed a tire deflation device to attempt to slow the fleeing vehicle. The fleeing vehicle continued to evade the officers at a high rate of speed, even though all four tires had been spiked.

40.    This initial tire deflating device was deployed where speeds reached approximately 100 mph.

41.    Summit County Sheriff's Deputy deployed a second spike strip (tire deflating

devise) along US-189/40 North Bound just prior to the off ramp at crossing street Silver Creek Drive.

42.    This second tire deflating device was deployed where speeds reached approximately 100 mph.

43.    The second deployment of a tire deflation device resulted in the vehicle losing control at high speed, rolling over multiple times, and crashing off the highway.

44.    An officer on sight reported, "Spike, good spike, he's crashing he's crashing under the overpass."

45.    Mr. Charles Dwight Caster, 23 years old, Ms. Daisha Reynolds, 19 years old, of Salt Lake City, and a puppy were ejected from the fleeing vehicle.

46.    Reynolds was pronounced dead at the scene as a result of her injuries.

47.    Caster was transported by medical helicopter to a Salt Lake area hospital in critical condition from the injuries he sustained from the crash.

48.    The incident closed US-189/40 westbound for approximately eight hours.

B.  UTAH ATTORNEY GENERAL'S OFFICE REPORT

49.    The Utah Attorney General's Office found that the interaction between the law enforcement agents and Mr. Caster on that day, September 22, 2021, began as vehicle pursuit following a call of a vehicle burglary.

50.    Both pursuits were terminated in Wasatch County, Utah.

51.    The suspect vehicle was again located and a third attempt to stop the suspects was made by the Utah Highway Patrol. The suspect vehicle failed to stop and a pursuit was once again initiated.

52.    Officers from both Summit County Sheriff's Office and the Utah Highway Patrol

utilized tire deflating devices to terminate the pursuit.

53.     The second tire deflation device was deployed after mile marker two on US Highway 40, resulting in the vehicle losing control and leaving the roadway.

54.     The vehicle appeared to have rolled several times through a ravine, and landed upright near the on-ramp to westbound US Highway 40.

C.  CONCLUSION

55.     The actions taken by the aforementioned SCSO Officers were in violation of Mr. Caster's Fourth Amendment rights by using excessive force to end a police pursuit.

56.     The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their personals, house, papers, and effects, against unreasonable searches and seizures."

57.     Mr. Caster charges was ultimately charged with murder, receiving or transferring stolen motor vehicle, trailer, or semitrailer; failure to respond to officer's signal to stop on or about December 29, 2021.

58.     Furthermore, Mr. Caster's life was destroyed as a direct result of the actions and decisions taken by the named entities and individuals.

59.     Mr. Caster reserves the right to supplement the referenced damages and the individuals and entities listed herein as discovery is made available to counsel Pace Johnson.

60.     The parties at fault include, without limitation, the following officers and/or employees acting under the color of law for and in behalf of the Summit County Sheriff's Office: Talbot, Graham, Norton, Higbee, Steed, Lieutenant Wright, Sheriff Martinez.

**<u>FIRST CAUSE OF ACTION</u>**
*Violation of the Fourth Amendment to The United States Constitution; Excessive Force and*

*Unlawful Seizure; 42 U.S.C. § 1983*

61.    Plaintiff hereby incorporates all preceding paragraphs by this reference as if those paragraphs were expressly set forth herein.

62.    The 4th Amendment to the U.S. Constitution states that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." This helps secure peoples' right to have their "persons, houses, papers, and effects" safe from unreasonable search and seizure. Case law generally establish that unnecessary excessive force or deadly force during a police chase can amount to an unlawful seizure in violation of the 4th Amendment.

63.    Case law further establishes that a police officer may not use deadly force against a fleeing felon who does not pose a sufficient threat of harm to the officer or others.

64.    Excessive force by law enforcement is analyzed under the objective reasonableness standard.

65.    Factors considered in the analysis of excessive force used by law enforcement generally include the severity of the crime, the immediacy of the threat posed to officers or others, proportionality of the force compared to the level of resistance or threat, the availability of alternative options, among other factors.

66.    Defendant deputies knowingly and/or recklessly used deadly force when the vehicle was spiked for a second time at a high rate of speed and after the chase had been called off multiple times.

67.    The Defendant Deputies' actions resulted in the subject fatal vehicle crash.

68.    The deadly force used by Defendant Deputies was not justified by the severity of the crime of theft for which law enforcement chased the vehicle.

69.    The police chase was called off multiple times by law enforcement for safety.

70.    The four tires of the fleeing vehicle were already "spiked" by Utah Highway Patrol when Defendant Deputies pursued the deadly force of a second set of spikes.

71.    The fleeing vehicle could not continue to drive indefinitely on deflated "spiked" tires.

72.    The Defendant Deputies knew or should have known that the fleeing vehicle would eventually slow on its own without the use of deadly force.

73.    The use of a second tire deflation device in this scenario was deadly force.

74.    The deadly force used by Defendant Deputies resulted in the immediate death of one occupant of the vehicle and severe life-threatening injuries to the other occupant, Plaintiff Caster, requiring emergency helicopter medical transport.

75.    The use of deadly force in this case was not justified by law or the Constitution.

76.    The use of deadly force was not proportional to the resistance exercised by the fleeing vehicle.

77.    The fleeing vehicle never came into contact with a law enforcement vehicle or any other vehicles on the road despite the chase covering many miles and the vehicle experiencing a successful tire spike deflation.

78.    The fleeing vehicle actively avoided all other traffic at all times.

79.    No one in the fleeing vehicle used or brandished a weapon of any kind.

80.    The only show of resistance from the fleeing vehicle was its attempt to escape the presence of law enforcement by driving away swiftly.

81.     The deadly force used by Defendant Deputies exceeded all reasonable standards under the circumstances and facts of the case, and amounted to unlawful seizure under the 4th Amendment to the Constitution.

82.     As a direct and proximate result of the foregoing, Mr. Caster has been injured and incurred significant damages, including, but not limited to, special and general damages, mental anguish, emotional distress, pain and suffering, personal injuries, and incidental and consequential damages.

83.     Mr. Caster is therefore entitled to an award of damages in an amount to be determined by a jury at trial, including general, specific, direct and consequential, and special damages, at a minimum, $3,000,000 in addition to reasonable attorney fees under 42 U.S.C. § 1988.

84.     Furthermore, the actions of Defendants against the Plaintiff were conducted with (a) actual malice and/or (b) a conscious, reckless, and outrageous indifference to the Plaintiffs' Constitutional rights and/or in furtherance of the policies, practices and/or customs of the Summit County Sheriff's Office thereby justifying an award of punitive damages to the fullest extent permitted by law.

## SECOND CAUSE OF ACTION
*Violations of the Fourth and Eighth Amendments to The United States Constitution; Deliberate Indifference; Failure to Intervene; 42 U.S.C. § 1983*

85.     Plaintiff hereby incorporates all preceding paragraphs by this reference as if those paragraphs were expressly set forth herein.

86.     The Defendant Deputies knew or should have known that their chase after the fleeing vehicle had been called off multiple times.

87.     The Defendant Deputies knew or should have known that the fleeing vehicle had already made contact with a tire deflation device successfully hitting all four tires.

88.     The Defendant Deputies knew or should have known that deploying a second tire deflation device under the circumstances would amount to deadly force.

89.     The Defendant Deputies knew or should have known that high pursuit policies do not justify deadly force under the facts available to them at the time of the application of deadly force.

90.     The Defendant Deputies knew or should have known that the fleeing car did not seek to harm, injure or kill officers or bystanders and continuing to give chase and execute deadly force was unwarranted.

91.     The Defendant Deputies knew or should have known the chase of the fleeing vehicle had been called off multiple times.

92.     The Defendant Deputies displayed deliberate indifference to the facts of the events by continuing to give chase despite the chase being called off multiple times, and by using deadly force in the form of the second tire deflation device when the vehicle had already been spiked and was traveling at a high rate of speed.

93.     Law enforcement personnel are required to uphold the law and Constitution, and protect the public from illegal acts, regardless of who commits them.

94.     The Defendant Deputies had a duty to intervene when Defendant Talbot unconstitutionally prepared and used deadly force on the fleeing vehicle

95.     The Defendant Deputies had a duty to intervene in the preparation and use of excessive force when the chase was called off multiple times.

96.     The Defendant Deputies failed to intervene in the unreasonable and

unconstitutional actions taken to stop the fleeing vehicle.

97.    As a direct and proximate result of the foregoing, Mr. Caster has been injured and suffered significant damages, including, but not limited to, special and general damages, mental anguish, emotional distress, pain and suffering, personal injuries, and incidental and consequential damages.

98.    Mr. Caster is therefore entitled to an award of damages in an amount to be determined by a jury at trial, including general, specific, direct and consequential, and special damages, at a minimum, $3,000,000 in addition to reasonable attorney fees under 42 U.S.C. § 1988.

99.    Furthermore, the actions of Defendants against the Plaintiff were conducted with (a) actual malice and/or (b) a conscious, reckless, and outrageous indifference to the Plaintiffs' Constitutional rights and/or in furtherance of the policies, practices and/or customs of the Summit County Sheriff's Office thereby justifying an award of punitive damages to the fullest extent permitted by law.

## THIRD CAUSE OF ACTION
*Violation of the Fourteenth Amendment to The United States Constitution; Protection Against State Action; Deprivation of Liberty; 42 U.S.C. § 1983*

100.    Plaintiff hereby incorporates all preceding paragraphs by this reference as if those paragraphs were expressly set forth herein.

101.    The Fourteenth Amendment to the U.S. Constitution requires state actors to comply with various incorporated rights of the U.S. Constitution, including the Fourth and Eighth Amendments.

102.    The Fourteenth Amendment to the U.S. Constitution also protections individuals

from deprivation of life or liberty without due process of law ensuring the equal protection under the law.

103.    Defendants, by and through its officers and employees, operated in all relevant cases under the color of state law, and therefore were at all times relevant herein, state actors as established by the U.S. Constitution.

104.    All actions of Defendant Deputies applied to the fleeing vehicle and to Mr. Caster were executed in performance of Defendants' official duties under state and/or municipal law or ordinance.

105.    Defendants, as state actors, violated the Fourteenth Amendment when they continued to give chase after the fleeing vehicle in violation of the Fourth and Eighth Amendments to the U.S. Constitution.

106.    Defendants also deprived Mr. Castor of life and liberty without due process when it exercised excessive force without lawful justification.

107.    As a direct and proximate result of the foregoing, Mr. Caster has been injured and suffered significant damages, including, but not limited to, special and general damages, mental anguish, emotional distress, pain and suffering, personal injuries, and incidental and consequential damages.

108.    Mr. Caster is therefore entitled to an award of damages in an amount to be determined by a jury at trial, including general, specific, direct and consequential, and special damages, at a minimum, $3,000,000 in addition to reasonable attorney fees under 42 U.S.C. § 1988.

109.    Furthermore, the actions of Defendants against the Plaintiff were conducted with (a) actual malice and/or (b) a conscious, reckless, and outrageous indifference to the Plaintiffs'

Constitutional rights and/or in furtherance of the policies, practices and/or customs of the Summit County Sheriff's Office thereby justifying an award of punitive damages to the fullest extent permitted by law.

### FOURTH CAUSE OF ACTION
*42 U.S.C. § 1983; Monell Liability*

110.    Plaintiff hereby incorporates all preceding paragraphs by this reference as if those paragraphs were expressly set forth herein.

111.    The Summit County Sheriff's Office ("SCSO") is the law enforcement agency in Summit County, Utah.

112.    The Sheriff of the SCSO is the "policymaker" with respect to SCSO, as a law enforcement agency. See e.g., *Revene v. Charles County Comm'rs*, 882 F. 2d 870, 874 (4th Cir. 1989).

113.    Municipal liability can attach under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for even a single decision made by a final policymaker in certain circumstances, regardless of whether or not the action is taken once or repeatedly. See *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986). If an authorized policymaker approves a subordinate's decision and the basis for it, such ratification would be chargeable to the municipality under *Monell*. See *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

114.    SCSO law enforcement operations are controlled or dictated by custom, pattern, practice, and/or procedure established by SCSO.

115.    At all times during the events of this action, Defendant Justin Martinez was the Sheriff of the SCSO.

116.    Defendant Justin Martinez, as the Sheriff of the SCSO, and a policymaker for the SCSO, had a custom, pattern, practice, and/or procedure of hiring sheriff deputies or officers who he knew or should have known violate constitutional rights by exercising excessive deadly force in high-speed chases.

117.    The SCSO knew or should have known that Deputy Talbot was not properly trained on how to act reasonably in a non-lethal high speed vehicle chase.

118.    The SCSO knew or should have known that the customs, policies, procedures, or practices of Defendant Deputies perpetuated unconstitutional actions be failing to exercise reasonable discretion in a non-lethal high-speed chase.

119.    Following Defendant Deputies many violations of the Constitution resulting in the fatal vehicle accident and injury to Mr. Caster, SCSO Sheriff Martinez exercised deliberate indifference by failing to correct the deputies' actions, discipline the deputies, or take corrective actions to remedy unconstitutional SCSO policies, procedures, customs or practices.

120.    Consistent with and as a result of SCSO's customs, patterns, practices, and/or procedures, Defendants violated the Constitution resulting in a fatal car accident.

121.    As a direct and proximate result of the foregoing, Mr. Caster has been injured and suffered significant damages, including, but not limited to, special and general damages, mental anguish, emotional distress, pain and suffering, personal injuries, and incidental and consequential damages.

122.    Mr. Caster is therefore entitled to an award of damages in an amount to be determined by a jury at trial, including general, specific, direct and consequential, and special damages, at a minimum, $3,000,000 in addition to reasonable attorney fees under 42 U.S.C. § 1988.

123.    Furthermore, the actions of Defendants against the Plaintiff were conducted with (a) actual malice and/or (b) a conscious, reckless, and outrageous indifference to the Plaintiffs' Constitutional rights and/or in furtherance of the policies, practices and/or customs of the Summit County Sheriff's Office thereby justifying an award of punitive damages to the fullest extent permitted by law.

### FIFTH CAUSE OF ACTION
*Violations of Article I, Sections 7 and 14 of the Utah Constitution; Deprivation of Liberty, Unlawful Seizure*

124.    Plaintiff hereby incorporates all preceding paragraphs by this reference as if those paragraphs were expressly set forth herein.

125.    Defendants were at all relevant times herein officers of the Summit County Sheriffs Office, a department of Summit County, operating in the course and scope of their employment, and under the color and guise of the laws of the State of Utah and violated Mr. Caster's civil rights in 2021.

126.    As SCSO Officers, Defendants owed Mr. Caster a duty to operate within the laws of the State of Utah and protections the Constitution of the State of Utah.

127.    A police officer may not use deadly force against a fleeing felon who does not pose a sufficient threat of harm to the officer or others.

128.    Defendants breached this duty owed to Plaintiff when Defendants exercised excessive deadly force in the attempted apprehension of the fleeing vehicle in which Mr. Caster suffered life threatening injuries and another occupant died at the scene of the crash.

129.    Defendants' actions deprived Mr. Caster of life and liberty without due process of law when Defendants applied deadly force in attempt to resolve the non-lethal situation and

preempt due process owed to Mr. Caster.

130.    As a direct and proximate result of the foregoing, Mr. Caster has been injured and suffered significant damages, including, but not limited to, special and general damages, mental anguish, emotional distress, pain and suffering, personal injuries, and incidental and consequential damages.

131.    Mr. Caster is therefore entitled to an award of damages in an amount to be determined by a jury at trial, including general, specific, direct and consequential, and special damages, at a minimum, $3,000,000 in addition to reasonable attorney fees under 42 U.S.C. § 1988.

132.    Furthermore, the actions of Defendants against the Plaintiff were conducted with (a) actual malice and/or (b) a conscious, reckless, and outrageous indifference to the Plaintiffs' Constitutional rights and/or in furtherance of the policies, practices and/or customs of the Summit County Sheriff's Office thereby justifying an award of punitive damages to the fullest extent permitted by law.

## SIXTH CAUSE OF ACTION
*Intentional Tort; Battery*

133.    Plaintiff hereby incorporates all preceding paragraphs by this reference as if those paragraphs were expressly set forth herein.

134.    Defendants' actions were intentional, caused harmful and offensive contact to Mr. Caster, lacked consent, and caused serious bodily harm and injury to Mr. Caster, which resulted in significant damage to Mr. Caster.

135.    Defendants intentionally prepared and used deadly force knowing that the force would be deadly under the circumstances.

136.    The deadly force used by Defendants in the form of the tire deflation devise made harmful contact to Mr. Caster through the vehicle in which Mr. Caster was traveling.

137.    The contact was harmful because it caused the fatal crash that seriously injured Mr. Caster.

138.    Mr. Caster did not voluntarily agree or consent to be subjected deadly force under the circumstances in this action.

139.    Defendants' actions were the proximate or direct cause of the fleeing vehicle crashing causing a fatality and inflicting life-threatening injuries upon Mr. Caster.

140.    Mr. Caster has suffered significant damage.

141.    As a direct and proximate result of the foregoing, Mr. Caster has been injured and suffered significant damages, including, but not limited to, special and general damages, mental anguish, emotional distress, pain and suffering, personal injuries, and incidental and consequential damages.

142.    Mr. Caster is therefore entitled to an award of damages in an amount to be determined by a jury at trial, including general, specific, direct and consequential, and special damages, at a minimum, $3,000,000 in addition to reasonable attorney fees under 42 U.S.C. § 1988.

143.    Furthermore, the actions of Defendants against the Plaintiff were conducted with (a) actual malice and/or (b) a conscious, reckless, and outrageous indifference to the Plaintiffs' Constitutional rights and/or in furtherance of the policies, practices and/or customs of the Summit County Sheriff's Office thereby justifying an award of punitive damages to the fullest extent permitted by law.

## PRAYER FOR RELIEF

Plaintiff Charles Caster prays for the judgement against Defendants as follows:

1.      On Plaintiff's First Cause of Action, Plaintiff requests an award of damages in an amount to be determined by a jury at trial, including general, specific, direct and consequential, and special damages, at a minimum, $3,000,000;

2.      On Plaintiff's Second Cause of Action, Plaintiff requests an award of damages in an amount to be determined by a jury at trial, including general, specific, direct and consequential, and special damages, at a minimum, $3,000,000;

3.      On Plaintiff's Third Cause of Action, Plaintiff requests an award of damages in an amount to be determined by a jury at trial, including general, specific, direct and consequential, and special damages, at a minimum, $3,000,000;

4.      On Plaintiff's Fourth Cause of Action, Plaintiff requests an award of damages in an amount to be determined by a jury at trial, including general, specific, direct and consequential, and special damages, at a minimum, $3,000,000;

5.      On Plaintiff's Fifth Cause of Action, Plaintiff requests an award of damages in an amount to be determined by a jury at trial, including general, specific, direct and consequential, and special damages, at a minimum, $3,000,000;

6.      On Plaintiff's Sixth Cause of Action, Plaintiff requests an award of damages in an amount to be determined by a jury at trial, including general, specific, direct and consequential, and special damages, at a minimum, $3,000,000;

7.      Plaintiff also requests an award of attorney fees and costs and interest.

8.      Plaintiff also requests pre- and post-judgement interest at the highest rates allowed.

9.      Plaintiff also requests a judgement against Defendants for punitive damages.

10.     For such other and further relief as the Court deems just and equitable under the circumstances.

DEMAND FOR JURY TRIAL

Plaintiff Caster hereby requests a jury trial on all claims and herewith submits the required jury fee.

DATED this day of September 21, 2023

PACE JOHNSON LAW GROUP

_/s/ Pace Johnson_
Pace W. Johnson
_Attorney for Plaintiff_
